Good morning. May it please the Court to count young federal defenders on behalf of Mr. Burgos. I'll begin by addressing the Guideline Enhancement. The District Court erred in applying a plus-12 increase under Section 2L1.2 for Mr. Burgos' 1992 conviction under Washington Revised Code Section 69.50.401. The Washington statute criminalizes the manufacturer, deliverer, or possession with intent to manufacture or deliver a controlled substance. Because Washington's definition of deliver does not correspond to the federal definition of distribute, the statute is categorically overbroad. Is there any case known to you, and there is none known to me, in which Washington courts have ever applied this statute to the lawful administration, what would otherwise be the lawful administration of drugs, which is what your claim is about overbreadth? Your Honor, I'm not aware of a Washington State case that does criminalize. Well, didn't the Supreme Court say in Duenas, I'm not sure how to pronounce it, that we're supposed to have a practical view of categorical matches and not to exercise speculation and so forth, to look at this as a practical matter? Well, we've argued that this fits within the grizzled exceptions of Duenas, in which the statute's overbreadth is apparent from its text. And I think there's two cases that are really unclear. Okay, but let's, here's another little wrinkle in all of this, because you're claiming that the Washington statute simply doesn't have the exception for administering a drug, that the federal statute has. But the federal statute doesn't actually have it as a part of that statute. You're looking to another section in there that does that, correct? We're comparing deliver with distribution, and distribution is defined under federal law, Federal Controlled Substances Act, to exclude, expressly exclude the... The administration part of it isn't within the statute that you're comparing. It's at another place in this scheme. Isn't that correct? That's correct. It's in the definitions portion, just like... And then, plus, you have no cases where it's ever been shown that Washington's ever attempted to prosecute someone for administering a drug under this particular section, right? That's correct. Two responses to that, though. I think first, if you look, and this kind of goes back to Judge Graber's question, if you look at Duenas Alvarez, that was a case where the petitioner argued that his conviction for unlawful taking of the vehicle didn't qualify, didn't meet the generic definition of a theft offense, because of the way that California applied the natural and probable consequences doctrine. We weren't dealing with a specific comparison of one text with another text. In this case, the state of Washington's text with the federal text it issued here. And I think it's the same problem this Court identified in Grizzle, where you were, the Court held that when the statute's overbreadth is apparent from its text, there's no requirement that the party actually point to a specific case. Shouldn't we look at all of Washington law to determine whether, in its other provisions governing physicians and other medical practitioners, it also contains a similar exception as federal law? I think that it certainly is appropriate. Have you done that? Well, I'd like to. The government has pointed to section 69.15.4012 to argue in its briefing that deliver and administer because they're used separately in that other portion, an individual cannot be convicted of delivering a controlled substance by administering it. And I think there's two problems with the government's argument. That wasn't actually my question, though. It has to do with the completely different statutes, whether there are other statutes that govern what medical practitioners can do. What you're pointing to here is part of the criminal code, and I'm asking what Washington law provides elsewhere in the statutes that would make it essentially impossible for the overbreadth to exist in the manner that you suggest. Well, to answer your question, Judge Graber, this goes beyond just criminalizing conduct by practitioners. Under Washington law, Washington defines administer in two ways. Washington defines administer as, and it's actually in Washington's definition of administer. Well, I guess I'm having a little trouble seeing how you're answering the question. She asked you, have you looked and found any, have you looked at other statutes that govern what physicians may or may not do? Well, Judge Graber's question was directed at practitioners, and my response is that administer doesn't just apply to practitioners. But have you looked to see what statutes control them? With respect to practitioners? Yes. Well, there's a definition of practitioner in the Washington Uniform Controlled Substances Act, and the word administer appears in that definitions portion. But a person can administer a drug under Washington law. It doesn't have to be a practitioner because a drug can be administered in two ways. Under Washington law, administer is defined as the direct application of a controlled substance, whether by injection, inhalation, ingestion, or any other means, the body of a patient or research subject by, one, a practitioner, or the patient or research subject at the direction and in the presence of the practitioner. So regardless of whether a practitioner is or isn't exempt from criminal liability, a person, a patient can still be convicted of delivering a controlled substance. So would you tell me in 25 words or less what you think is unlawful under the Washington statute that is not unlawful under the federal or vice versa, that make them not a match? Deliver does not include an exception for administer. But under federal law, distribute expressly contains an exemption for administer. That's my 25 words or less response. And just to, when we were talking earlier about drizzle, I think the court should also look to the dog. And in many respects, this is very similar to what happened in the doll. In the doll, you had a case where the defendant argued that the California unlawful taking statute, unlawful taking of a vehicle, was categorically overbroad because it criminalized accessories after the fact. Now, the actual California statute didn't use the phrase accessory after the fact. It actually said accessory two. And what this court did in holding that there wasn't a case that was required in looking to the express language of the statute, this court actually looked to an 1872 law in which California had abolished the distinction between principles and accessories before the fact. And from that, this court surmised on bond that because there was no distinction between accessories before the fact and principles, that accessory two in that California vehicle code must refer to accessories after the fact. And as the very persuasive dissent in the doll pointed out, this sort of went beyond just a mere comparison of statutory tests. And I think, if anything, there's a much stronger argument here than there is in the doll that the statute's overbreadth is apparent from its test. I'd just like to address a couple other points before I reserve the remainder of my time for rebuttal that the government has argued in this briefing. The government has cited two state cases, State v. Martinez and State v. Hornaday, to argue that an individual cannot deliver a controlled substance by administering it. And in neither of those cases, the Washington courts actually addressed that particular question. If the court has no further questions, I'll reserve the remainder of my time. You may do that. Thank you. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. In 2007, the United States Supreme Court could not have made it clear that in order to carry a claim of categorical overbreadth, it requires more than legal imagination. It requires a realistic probability that a statute has been applied in the non-generic manner for which the defense contends. I think, after my colleague's presentation, there's no dispute now that you can't cite a case. And as Your Honor, Judge Graber pointed out, you couldn't either, or you couldn't find one. And I would also point out that the Fifth Circuit, as recently as March 26th of this year, in the Valeda-Mejia case, which is cited in the footnote, to our response brief, reached the same conclusion. Now, that said, the only chance my colleague has to carry his case is this Griesel exception. I believe, as Judge Kaczynski pointed out in a dissent to the Dahl that Judge Callahan joined, that exception has to be narrowly construed, lest it swallow the rule. All Griesel stands for is the proposition that if a legislature expressedly, that is, affirmatively, reaches non-generic conduct, no imagination is required to conclude that it would be overruled. And the two examples that I point to in my brief are Griesel itself, which reached Oregon burglary. Burglary was always understood to refer only to structures. What the Oregon legislature did in the statute issued there was it provided structure in addition to its ordinary meaning includes things such as vehicles, boats, aircraft. So there's no question, you look at the text of that statute, it affirmatively provides the examples that make the statute overruled. The Dahl reached California Vehicle Code 10851, vehicle theft. It expressly reaches the word, or yeah, expressly includes the word accessory in it. Elsewhere, the California Penal Code provides that accessory only means accessory after the fact. So again, you look at these two statutes, there's no question that they reached the generic conduct. What my colleague would have you do is jump by extension to a situation that we have in this case, where it's no longer the affirmative inclusion of problematic language, but suddenly the absence of an exception. And I would submit that that is stretching the Griesel exception too far. Have you done what I asked opposing counsel, that is, have you looked at other statutes not in the criminal code to determine whether in Washington it would really not be possible even to have a prosecution for administration in the way that the federal statute details the exception? I believe I have to some extent, Your Honor. And I believe it's footnote 10 at page 23 of our response brief. We cite 69.50.308. And it provides that a practitioner may deliver a controlled substance if in the course of their ordinary practice without fear of criminal liability. And I didn't look at Chapter 69. The reason why is if you look at the statute that we're talking about today, which is revised code section 69.50.401, the preparatory clause to that statute says, except as otherwise authorized in this chapter, the 69.50.308 section that was quoted to you that's, again, at footnote 10 of page 23 of our brief, is in Chapter 69. The government would submit that that therefore needs that. I have another issue that I'd appreciate you addressing, which we didn't get to in the opening argument. But I found the district court's sentencing troublesome, or troubling at least. It seemed to be irascible, I would say, at best, saying, you know, I'm sure you had a good excuse, dollars to donuts. You guys always come up with good excuses. And it just seemed very, I don't know, disrespectful. And I just, I don't know if it goes so far as to cause the sentence to be substantively unreasonable, but the sentence was significantly higher than what both parties had requested. And I would appreciate your commenting on that issue. It's altogether possible that Judge Benitez was venting, expressing frustration, as he pointed out, unlike other districts in the country, the judges in the Southern District see an incredible amount of these 1326 cases. As he was pointing out, also during the colloquy with the trial counsel, there were certain holes in the story that the defense counsel proffered, which was proffered also for the first time at sentencing. Even though this sentencing had been set months ahead in advance, the room of sentencing papers provided, all these arguments were coming to Judge Benitez for the first time. Is that contrary to the procedure that was required? I believe it is. Under our local rules, you're supposed to file sentencing papers in advance of sentencing by some grounds. And if you don't do that, can you take it out on the defendant? No, but I would respectfully disagree that that's exactly what's happened. I'm sure. I think it is within an Article III judge's powers to chastise. Well, did he essentially find Burkhaus not credible? And then focused on, there's a lot of recidivism here. Absolutely. How much recidivism is there present in the record? I mean, I believe, you know, this was the third 1326 conviction. Not only that, I believe it was in 1998. The first one is incurred a sentence of 70 months. And I believe it's true. Well, the court did, by the way, expressly find him not credible at year 22. But because he said the statements were made not by the client under oath and are not credible. So I think he did. But I guess I just, the tone of it was, I thought, unfortunate. I mean, and that could very well be your honor. Oh, wait. Just stop the clock, too. Please. Sorry about that. Okay. Yeah, so I think we probably don't have to go back to an earlier part of things. Thanks, Carmen. Hey, we've got you back. Yes, I'm back. Thanks for your patience. I think we stopped everything because Judge Callahan saw right away that you had departed the screen. And so I think we'll stop the clock and we'll continue where we left off. Thank you, Your Honors. But as I was saying, I don't believe Judge Bonita is active in these hearings. In 1998, this defendant commits the same offense and gets a sentence of 70 months. Eight years later, in 2006, he commits the same offense, and he gets a significant break. As Judge Bonita referred to it in the record, the court system basically did him a favor, gave him a 24-month lower sentence to 46 months. And then just three months after the supervised release period for that conviction ended, the defendant comes back, recommits for the third time. And I believe Judge Bonita has even pointed out at one point in the record, you know, he easily could have increased that sentence based on that flavor recidivism, but he said, I'm going to give you the benefit of the doubt and give you the same sentence. Now, going back also to Your Honor's concern about, you know, the exact language about the betting, he had better reasons for coming earlier. One thing I would love to hear from my colleague, Honor McDonald, is what exactly is the ultimate point of this claim? What he's saying is clearly erroneous. Finding that he had good reasons to come back in the past isn't the necessary implication that therefore he had bad reasons for coming. I don't see how that moves the ball at all for proving a substantively unreasonable sense, particularly in light of the abuse of discretion standard. Go ahead. Let me quickly just take you in the last part of your time. You argue that if, for some reason, this court were to find that the Washington conviction was not proper, that the 1996 Utah conviction was an alternate basis. But it didn't seem that the district court relied on that in its sentence. So would you concede that it would have to be remanded for that? Because, I mean, we don't have in front of us the Utah conviction. It wasn't developed. Correct, Your Honor. It says in the PSR it said that it is, but I mean, I've had to write dissents where I said something was something and other people said it wasn't, so. The fundamental principle I would fall back on is the timeless one that this court can affirm on any grounds. But we don't have anything here. How could we say that the Utah conviction? Are you just saying because the PSR said it was? No, but in addition, I mean, I know I had two pages of briefing. I mean, it's a pure issue of law to statute. It only applies to the conduct of possession with the intent to deliver. There's no more question about whether deliver is overbought because of the statute. I mean, we would urge the court. Well, but we don't even know what the conviction says, though. You can say look at the statute, but we don't have that. Do we have the record of conviction? That be problematic? You can't just look at the statute, can you? Well, if it's a pure categorical issue, we could. And I would say because, you know, I've had cases where we argue there are other conditions in the record that the parties never knew about. This is one where the PSR specifically put the defense on notice, and yet was there any objection to it? No, because that would have been the right time to develop the record. But instead, the defense stood silent, even though they had expressed notice from the PSR that the alternative basis for the forced flow was that Utah statute. But we would urge the court. I mean, that was just a fallback argument. This Washington statute, it came up prior, as we pointed out, the circuit reached it. I have another appeal that just got filed in response to Toledo Martinez. I mean, these categorical issues. It's pending. It's pending. Correct. Unless there are any further questions, the gentleman wants some minutes. Thank you. I have no questions. Mr. Young, you have some time remaining. And I would appreciate using part of it to discuss the Utah question. Yes. Well, to begin with, I think that, as we argued in our reply brief, that Utah statute is overbroad on its face, because it criminalizes the distribution of a small amount of marijuana for no remuneration. And even the Attorney General acknowledged in his responsive brief before the Supreme Court in Montgomery, citing that Utah statute as an example of a statute that criminalizes marijuana distribution, irrespective of penalties. So you don't have to take my word for it that it's overbroad. Attorney General Holder has at least cited that as an example of a statute that does criminalize marijuana distribution, irrespective of penalty. And our position is that because it's overbroad, it's indivisible, that it cannot serve as a basis for the enhancement. And I know that opposing counsel has asked the court issue a published opinion in this case, because the Washington statute issue is likely to emerge again. In his view, I would just ask that the court does do that, that the court also address the Utah statute as well. With regard to the clearly erroneous argument, opposing counsel asked, asked me to come up here and explain why it was important, the dollars to donuts comments, and why the fact that he had a good excuse this time was important. And if you look at the sentencing transcript, the overwhelming majority of the trial attorney's argument there was spent arguing to the district court that because he had a good excuse coming back to see his children this time, it supported a within-guideline sentence of 24 months. Well, he got 70 months previously, 46 months previously. This time he had a good reason for coming back. He came back to see his children. And because of that, it was very important to I guess the way you can interpret that, though, is I know you have a good reason, and that's what you want to do, but it's not a legally good reason. I understand that. And I don't think it's just the mitigating factors support a lesser sentence. It doesn't mean that he should have gotten no sentence at all. It was just, in this case, a high-end guideline sentence of 24 months. I'm wondering if you're analyzing it for abuse of discretion. I mean, isn't that one way to look at it? Yeah, I understand why you think you had a good reason, but it just doesn't wash. Because then everyone in Mexico that has children here, that would be a good reason then to come and see your kids. Well, I think that the district court did more than simply just assess whether it was or wasn't a good reason. He actually said, I'd be willing to bet that you also made some sort of an excuse during your previous convictions, and you come in, you probably said the same thing before. It seemed to be based on stereotypes of other things he's seen with other defendants rather than what happened in this particular defendant's case. I see I'm over my time. The Court has no further questions. Thank you very much, Counsel. The case just argued is submitted, and we appreciate both counsel's arguments.
judges: Graber, Gould, Callahan